UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STEVEN M. NEUHAUS, Individually, and
in his official capacity as County Executive                    Docket No:
and COUNTY OF ORANGE,

                    Plaintiffs,

   -against-                                               **COMPLAINT**

TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY and METROPOLITAN
TRANSPORTATION AUTHORITY,

                    Defendants.
--------------------------------------------------------X

     Plaintiffs, STEVEN M. NEUHAUS, Individually and in his official capacity as County

Executive and COUNTY OF ORANGE, by their attorney, RICHARD B. GOLDEN, County

Attorney, as and for their Complaint, allege as follows:

     1.     This action is brought to protect the rights and liberties of the Plaintiffs and, by and

through them, employees and residents of the County of Orange, New York, from the New York

Central Business District Tolling Program, often referred to as the New York City Congestion

Pricing Program (hereinafter the "toll" or "Plan").

     2.     Defendants intend to enact and authorize a toll for entering and operating a motor

vehicle south of 60th Street in Manhattan.

     3.     The Plan is not a valid toll because there is no rational relationship between the

charge made against the driver and the service provided by the Defendant governmental entities.

     4.     The toll serves only to impose a tax on drivers passing into the Central Business

District, constituting an illegal tax, and violates multiple provisions of the New York State and

Federal Constitutions.

5.    The toll/tax is illegal as it unconstitutionally restricts the right to travel and treats classes of persons differently for the same activity with no rational basis, in violation of the equal protection of the laws as provided for in the New York State and Federal Constitutions.

6.    Furthermore, the disparate treatment of classes of vehicle operators is a violation of County of Orange vehicle operators' substantive due process rights.

### JURISDICTION & VENUE

7.    This action is brought under the New York and U.S. Constitutions, 42 U.S.C. § 1983, and 23 U.S.C. § 301. The Court has subject-matter justification over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

8.    Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201 and 2022.

9.    Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

10.   Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

### PARTIES

11.   Plaintiff STEVEN M. NEUHAUS is the duly elected County Executive and resident of the County of Orange, New York, and brings this action individually and as County Executive on behalf of the residents and employees of the County of Orange. As part of his duties the County Executive is the official ultimately in charge of authorizing the reimbursement by the  County of Orange to its employees, as well as direct payments on behalf of its employees, for travel-related expenses incurred. Also, as a resident of Orange County, STEVEN M. NEUHAUS will be adversely affected individually by the payment of said toll under the Plan.

12.   Plaintiff COUNTY OF ORANGE is a municipal corporation duly organized and existing under the laws of the State of New York.

2

13.     Defendant, TRIBOROUGH BRIDGE and TUNNEL AUTHORITY ("TBTA") is a public benefit corporation organized and existing under the Public Authorities Law of the State of New York. Defendant TRIBOROUGH BRIDGE and TUNNEL AUTHORITY ("TBTA") is a program sponsor for the Plan.

14.     Defendant METROPOLITAN TRANSPORTATION AUTHORITY ("MTA") is a public benefit corporation chartered by the New York State Legislature in 1968 under the METROPOLITAN TRANSPORTATION AUTHORITY ACT, N.Y. Pub. Auth Law § 1260, *et.seq.*

### STATEMENT OF THE CASE

15.     In 2019, the New York State Legislature enacted New York State Vehicle and Traffic Law Article 44-c (the "Traffic Mobility Act"), which authorized the TBTA to impose tolls on travel in the City of New York ("City") by establishing a "Central Business District Tolling Program."

16.     The Traffic Mobility Act authorized the TBTA an affiliate of the MTA, pursuant to N.Y. Vehicle and Traffic Law § 1704-a(1), to establish and charge tolls for vehicles entering into the Central Business District.

17.     N.Y. Vehicle and Traffic Law § 1701 states that the intent of the congestion pricing is to provide capital funding for mass transit particularly the subways, to reduce vehicular congestion on the roadways, and to protect the public health.

18.     N.Y. Vehicle and Traffic Law § 1704 defines the central business district ("CBD") as the "geographic area in the borough of Manhattan south of and inclusive of sixtieth street to the extent practicable but shall not include the FDR Drive, and New York State Route 9A

3

otherwise known as the 'West Side highway' including the Battery Park underpass and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St."

19.     The goals of the Plan are to heavily discourage vehicles from entering Manhattan (aside from Uptown Manhattan above 60th Street) and to generate revenue for the city subway system and other public transportation systems run by the MTA. N.Y. Vehicle and Traffic Law §§ 1701, *et. seq.*

20.     According to the MTA, the Plan will have an enormous impact in that:

> The Central Business District (CBD) Tolling Program will be the first congestion pricing program in the United States . . . . Implementing congestion pricing will dramatically improve quality of life for New Yorkers. Fewer cars in the central business district will reduce emissions and help New York achieve its ambitious climate goals. Less stop-and-go traffic will also be safer for pedestrians and bikers. Drivers who pay the toll will spend less time sitting in traffic, and other vehicles – such as buses or emergency vehicles – will be able to move faster. The program will also raise revenue to fund $15 billion for critical transit projects, such as upgrading to the signaling system, accessibility improvements, and expanding access to the transit system. https://new2uat3.mta.info/project/CBDTP

### County of Orange

21.     The County of Orange as of the 2020 census had a population of over 400,000 residents. Even though Orange County is within the MTA region, it is a "transit desert." There is no one-seat train ride into Manhattan.  Orange County residents  are only served by one sporadically run train line. (The train does not terminate in New York City; it runs to Secaucus and Hoboken in New Jersey and a separate train must then be taken to arrive in Penn Station). Despite this lack of service, Orange County residents pay similar, if not identical, MTA fees and taxes as residents in highly commuter-rail-serviced areas. Supporters of the Plan state that the intent is to shift people's commuting behavior onto public transit; for residents of Orange County this outcome is unrealistic and punitive, given the lack of viable transit options. STEVEN M.

NEUHAUS, COUNTY OF ORANGE employees, and many of the residents of the County of Orange will need to continue to drive – and, under the proposed plan, pay an additional $15 toll on top of the over $15 toll at the George Washington Bridge – due to the lack of viable transit alternatives.

22.     Being a suburban county close to New York City, Orange County residents rely on their proximity to Manhattan below 60th Street, for work, healthcare, shopping, and recreation, and will be severely impacted by the Congestion Pricing Plan.

23.     Orange County employees also travel on official business to Manhattan below 60th Street and the County of Orange is obligated to pay for their travel expenses, including tolls.

24.     Because of the lack of a one seat train ride to Manhattan, public transportation is unfeasible or significantly impractical to many COUNTY OF ORANGE residents and employees because of their age, health, safety concerns in terms of crime as well as social distancing, cost, travel time (particularly during non-peak hours), and other reasons.

25.     As to commuters alone, U.S. Census figures show that Orange County has approximately 234,000 workers, nearly 77% of whom commute to work by car. American Community Survey of U.S. Census Bureau, 2022 data for Orange County, NY Additionally, about seventy-six thousand residents west of the Hudson River commute into New York City by car every workday. The Ins and Outs of NYC Commuting, NYC Dept. of Planning, Appendix II. P. 5.

26.     The median age of Orange County residents makes the Congestion Pricing Plan particularly impactful on them because of their need to drive into Manhattan for work and healthcare and their increased inability to use public transportation. Twenty-one percent of the Orange County population is 60 years old and older.  United States Census Bureau Profile Data,

Orange County, NY  Lower and Midtown Manhattan also have the highest rates of primary care healthcare providers per capita. Primary Care Development Corp., Primary Care Access in New York City Report, 2019

## The Illegal Planned Tolls

27.　At present, the Defendants' intent is to charge a toll for drivers whose motor vehicles cross the boundary of the CBD, entering into the CBD from outside the district.

28.　There is no plan to toll vehicles based on time in the congestion zone, those garaged and staying in the congestion zone, distance traveled within the congestion zone, or by any other variable measure of contribution to congestion.

29.　The toll generates revenues by charging drivers for the use of NYC streets within the CBD.

30.　The toll remains constant, as a per-day charge, regardless of milage driven or time spent on the City's roadways in the congestion zone.

31.　While planning to charge tolls on all vehicles entering the CBD, the TBTA and MTA will not charge a toll for persons who garage their vehicles inside the CBD, drive within the CBD, but do not cross out of and re-enter the CBD.

32.　The toll revenues are intended for use by the TBTA and MTA for mass transit capital projects.

33.　The TBTA and MTA will use the revenue of the tolling scheme primarily for public transit systems within the City.

34.　The MTA has announced that revenue from Congestion Pricing will be used to improve transit and that 80% of the money will be used to modernize New York City subways and buses; 10% will go to Long Island Railroad, and 10% to Metro-North Railroad.

6

35.     Neither the MTA nor the TBTA has announced any substantial service upgrades that would benefit the residents of Orange County.

36.     The claim that there will be less congestion affecting Orange County residents who enter the CBD is without basis in fact.

37.     No part of the toll funds is to be used for the maintenance or upkeep of the City roadways whose use is being tolled.

38.     The purpose or effect of the congestion pricing is to penalize drivers for entering into the congestion pricing zone to deter them from driving into the CBD.

39.     It is the intent of congestion pricing to compel persons who would otherwise drive into Midtown and Lower Manhattan to take mass transit into that area.

40.     Recently, the primary mass transit option in the city, the subway, was so dangerous that the Governor sent the National Guard into the subway system to provide security.

41.     As a part of the security provided, the police and National Guard are conducting searches of private citizens' bags who are using the subway. This is an additional burden the Defendants will force on the people of Orange County who are forced to use the subway because of the congestion pricing toll.

42.     Many Orange County residents and employees do not have a reasonable mass transit alternative for entry into Midtown and Lower Manhattan, as Orange County is only served by one commuter rail service line pursuant to an agreement between Metro-North Railroad and New Jersey Transit.

43.     The congestion pricing toll is not a traditional toll, but a fee or tax upon persons who cross into the CBD.

44.     The congestion pricing toll provides no benefit from the MTA or TBTA to the persons against whom the toll is imposed, or the class of persons against whom it is imposed.

45.     The congestion pricing toll does not compensate the MTA or TBTA for costs or expenses of services rendered by the City, where the use of City public roads is the basis for the charge.

46.     The revenues of the congestion pricing plan are to be used for general improvements for the use of the public at large.

### FIRST CLAIM FOR RELIEF
### (Violation of the Right to Travel)

47.     The Plaintiffs repeat and reallge in this Paragraph "47" each of the foregoing allegations as though set forth at length herein.

48.     The United States Constitution protects the fundamental right to travel within the United States.

49.     State laws or policies implicate this fundamental constitutional right when impeding travel is its primary objective.

50.     Impeding certain travel into the CBD is the primary objective of Congestion Pricing and the Plan.

51.     The Congestion Pricing program includes tolls that were designed to, and will, deter the right to travel of Plaintiffs and/or the program penalizes their exercise of the right to travel.

52.     The Congestion Pricing program is not narrowly tailored to meet a significant governmental interest.

## SECOND CLAIM FOR RELIEF
### (Violation of Equal Protection and Due Process Clauses)

53.     The Plaintiffs repeat and reallge in this Paragraph "53" each of the foregoing allegations as though set forth at length herein.

54.     The congestion pricing toll is not legal.

55.     The congestion pricing toll does not apply fairly and equally to all persons availing themselves of the public roadways in the CBD of Manhattan.

56.     People who garage their vehicles outside the CBD, and thus, whose trips originate outside the CBD, will by necessity be required to pay a toll to enter the CBD.

57.     The same toll is to be charged regardless of the distance traveled or the amount of time spent traveling within the CBD.

58.     To the contrary, those who garage their vehicles inside the CBD, and thus, whose trips originate inside the CBD, will be free to drive about the CBD without the necessity of paying any toll no matter how far that vehicle may drive while in the CBD, and regardless of the traffic congestion caused thereby within the CBD.

59.     The tolling plan is intended to be a penalty to divert certain drivers to use public transportation.

60.     The class of persons to be tolled is the population of vehicle owners who drive vehicles in the CBD, other than those who garage and restrict their vehicle's use within the CBD.

61.     The toll is only charged for crossing into the CBD, not for using the roadways in the CBD.

62.     Therefore, a person is charged the same toll regardless of whether that person drives a single block in the CBD or drives many miles in the CBD.

63.     The tolling plan, for the reasons set forth above, does not fairly and equally target the intended class, all persons driving within the CBD, to reduce congestion.

64.     The announced ill to be cured is the reduction of congestion on CBD roadways. Punishing residents and drivers who live outside of the CBD area with this toll is not reasonably related to the tolling plan where residents and drivers who live in the CBD are free to cause unlimited congestion without paying the penalizing toll.

65.     There is no rational basis for discriminating in favor of the group of people garaging vehicles in the CBD versus the group of people who garage their vehicles outside the CBD.

66.     Charging the toll to a person whose trip originates outside the CBD regardless of how much that person may contribute to road congestion, but having no means to charge a person whose trip originates inside the CBD, even if that trip may add substantially to congestion is a violation of the right to equal protection of the laws.

67.     There is no rational relationship between the charge made against the driver and the service provided by the government.

68.     The toll is not rationally related to a legitimate governmental interest.

69.     By virtue of the foregoing, pursuant to 42 U.S.C. § 1983, the New York State and U.S. Constitutions, the Court should issue a declaratory judgment declaring that the toll under the Plan violates the Equal Protection and Due Process Clauses of the New York State and U.S. Constitutions, and should issue a permanent injunction enjoining the TBTA/MTA from charging that toll and enjoining the Federal Highway Administration from authorizing it.

## THIRD CLAIM FOR RELIEF
### (Illegal Tax)

70.     The Plaintiffs repeat and reallge in this Paragraph "70" each of the foregoing allegations as though set forth at length herein.

71.     The congestion pricing toll is, as a matter of law, an unauthorized tax.

72.     The TBTA is not statutorily or constitutionally authorized to charge a tax.

73.     In the absence of such State statutory or constitutional authority, the TBTA may not levy a tax.

74.     Pursuant to the New York State Constitution, only the State Legislature may authorize a tax. N.Y. Const. Art. 16, § 1.

75.     Pursuant to Public Authorities Law § 553(12-a), "all tolls, fees and other revenues derived from the central business district tolling program shall be applied to the payment of operating, administration, and other necessary expenses of the authority properly allocable to such program, including the capital costs of such program, and to the payment of interest or principal of bonds, notes or other obligations of the authority or the metropolitan transportation authority issued for transit and commuter projects . . . ."

76.     N.Y. Const. Art. 16, § 1 provides, "The power of taxation shall never be surrendered, suspended or contracted away . . . .   Any laws which delegate the taxing power shall specify the types of taxes which may be imposed thereunder and provide for their review."

77.     In order to have a Constitutional delegation of the taxing power, the delegation must specify the type of tax that may be imposed and additionally provide administrative or judicial review thereof.

78.     The taxing power may not be delegated to mere administrative agencies or other governmental departments and the TBTA and the MTA are not among the entities whom the New York State Constitution allows to be delegated taxing authorities. See, N.Y. Const. Art. 8, § 3.

79.     The toll is an illegal tax because the toll amount is regulated by Defendants' necessities in providing services to the public generally and not tethered to the use, maintenance and repair of the subject area.

80.     The congestion toll is in no way related to the volume and use an individual places on the roadways in the CBD.

81.     The charges to the driving public under the Plan are to support the operation and capital expenditures of the entire Integrated Travel Network (ITN) operated, managed, maintained, and funded by the TBTA and MTA.

82.     The charge also is the same regardless of how much a given person adds to congestion on any given day, and thus, it cannot be considered a toll, which must possess a fair approximation of use or privilege for use.

83.     No tax was authorized by the CBD enabling legislation.

84.     The CBD enabling legislation did not specify the types of taxes which may be imposed and did not provide for some type of administrative or judicial review.

85.     The tax is not charged to similarly situated individuals, that group being all individuals driving in the CBD.

86.     No part of this tax is charged to persons who garage their vehicles in the CBD and drive only within the CBD.

87.     Persons driving in the CBD are not being treated uniformly.

88.     By virtue of the foregoing, the Court should issue a declaratory judgment declaring that the toll under the Plan is an unauthorized tax and should also issue a permanent injunction enjoining the TBTA/MTA from charging that toll/tax and enjoining the Federal Highway Administration from authorizing it.

WHEREFORE, Plaintiffs hereby request Judgment:

1. Upon the First Claim for Relief, pursuant to 42 U.S.C. § 1983 and the U.S. Constitution: (a) a declaratory judgment declaring that pursuant to the U.S. Constitution the toll under the plan violates the right to travel; and (b) a permanent injunction enjoining Defendants' implementation of the Plan or the charging of the toll;

2. Upon the Second Claim for Relief, pursuant to 42 U.S.C. § 1983 and the New York State and U.S. Constitutions: (a) a declaratory judgment declaring that the toll under the Plan violates the Equal Protection and Due Process Clauses of the New York State and U.S. Constitutions, and (b) a permanent injunction enjoining the Defendants' implementation of the Plan or the charging of the toll;

3. Upon the Third Claim for Relief: (a) a declaratory judgment declaring that the toll under the Plan is an unauthorized tax, and (b) a permanent injunction enjoining the Defendants' implementation of the Plan or the charging of the toll;

4. Granting Plaintiffs such other and further relief as the Court deems just and equitable.

Dated:     Goshen, New York
           May 23, 2024

RICHARD B. GOLDEN (RG8264)
County Attorney
Orange County Attorney's Office
*Attorneys for Plaintiffs*
255-275 Main Street
Goshen, New York 10924
Phone: 845-291-3150