UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
COUNTY OF ROCKLAND, EDWIN J. DAY, in his
official capacity as County Executive, and the
LEGISLATURE OF THE COUNTY OF ROCKLAND,

**OPINION & ORDER**

                                        Plaintiffs,              No. 24-CV-2285 (CS)
                                                                No. 24-CV-3983 (CS)

        – against –


TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY
and METROPOLITAN TRANSPORTATION
AUTHORITY,

                                        Defendants.
-------------------------------------------------------------------x
STEVEN M. NEUHAUS, individually and in his official
capacity as County Executive, and COUNTY OF
ORANGE,

                                        Plaintiffs,


        – against –


TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY
and METROPOLITAN TRANSPORTATION
AUTHORITY,

                                        Defendants.
-------------------------------------------------------------------x


Appearances:

David H. Chen
Matthew G. Parisi
Bleakley Platt & Schmidt, LLP
White Plains, New York
*Counsel for Plaintiffs County of Rockland, Edwin J. Day, and the Legislature of the County of Rockland*

William S. Badura
Richard B. Golden
Orange County Government Center
Goshen, New York
*Counsel for Plaintiffs Steven M. Neuhaus and County of Orange*

Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
Kaplan Martin LLP
New York, New York

Mark A. Chertok
Elizabeth Knauer
John F. Nelson
Sive, Paget & Riesel, P.C.
New York, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is the omnibus motion to dismiss of Defendants Metropolitan Transit Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") in related cases *County of Rockland, et al. v. Triborough Bridge and Tunnel Authority, et al.* ("*Rockland*"), No. 24-CV-2285, and *Neuhaus, et al. v. Triborough Bridge and Tunnel Authority, et al.* ("*Orange*"), No. 24-CV-3983. (*Rockland* Dkt. No. 57; *Orange* Dkt. No. 45.)[1]  For the following reasons, the motion is GRANTED.

I.    **BACKGROUND**

The following facts are taken from the operative complaints – the *Rockland* Amended Complaint, (*Rockland* Dkt. No. 9 ("*Rockland* Compl.")), and the *Orange* Complaint, (*Orange*

---

[1] I refer to documents found on the *Rockland* docket as "*Rockland* Dkt. No." and documents found on the *Orange* docket as "*Orange* Dkt. No."  I will use the *Rockland* docket number for documents and entries found on both dockets.

Dkt. No. 7 ("*Orange* Compl.")) – and publicly available MTA records.[2]  I accept as true the

facts, but not the conclusions, set forth in the respective complaints.

A.    **Facts**

The plaintiffs in *Rockland* are the County of Rockland; Edwin J. Day, the County

Executive for the County of Rockland; and the Legislature of the County of Rockland (together,

the "*Rockland* Plaintiffs").  (*Rockland* Compl. ¶¶ 10-12.)  The plaintiffs in *Orange* are the

County of Orange and Steven M. Neuhaus, the County Executive for the County of Orange

(together, the "*Orange* Plaintiffs").  (*Orange* Compl. ¶¶ 11-12.)  The defendants in both cases are

the MTA, a public benefit corporation, and the TBTA, a public benefit corporation and affiliate

---

[2] In considering a motion to dismiss, a district court "may consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011).  (Unless otherwise indicated, case quotations omit internal quotation marks, citations, alterations and footnotes.)  "Courts may take judicial notice of public documents or documents of public record in addition to records of administrative bodies."  *Simeone v. T. Marzetti Co.*, No. 21-CV-9111, 2023 WL 2665444, at *1 (S.D.N.Y. Mar. 28, 2023).  Courts may also take judicial notice of "facts that are publicly announced on a party's website, the authenticity of which is not in dispute and is capable of accurate and ready determination," *Paulino-Santos v. Metro. Transit Auth.*, No. 23-CV-3471, 2024 WL 1363574, at *3 n.2 (S.D.N.Y. Mar. 29, 2024); *see Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 247 (S.D.N.Y. 2025), although only for the fact that the statements were made, not for the truth of them, *see, e.g.*, *Grecco v. Age Fotostock Am., Inc.*, No. 21-CV-423, 2021 WL 3353926, at *3 (S.D.N.Y. Aug. 2, 2021); *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 295 (S.D.N.Y. 2018).  Accordingly, the Court will take judicial notice of the following documents posted on the MTA's public website:  (1) the Traffic Mobility Review Board's Report, *available at* https://www.mta.info/document/127761 ("Traffic Mobility Review Board Report"), (2) the Central Business District toll schedule, *available at* https://www.mta.info/document/138931 ("CBD Toll Schedule"), and (3) the Low-Income Discount Plan, *available at* https://www.mta.info/fares-tolls/tolls/congestion-relief-zone/discounts-exemptions/low-income-discount-plan ("Low-Income Discount Plan").  *See Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 65 & n.2 (2d Cir. 2021) (taking judicial notice of maps of New York City bus routes available on MTA's public website); *Brown v. N.Y.C. Transit Auth.*, No. 22-CV-2949, 2024 WL 1347283, at *6 (S.D.N.Y. Mar. 29, 2024) (taking judicial notice of reports available on public website of the Office of the MTA Inspector General); *Simeone*, 2023 WL 2665444, at *1 (taking judicial notice of documents available on FDA's public website).

agency of the MTA (together, "Defendants").  (*Rockland* Compl. ¶¶ 14-15, 17; *Orange* Compl. ¶¶ 13-14, 16.)

In 2019, the New York State Legislature enacted the Traffic Mobility Act (the "Act"), N.Y. Veh. & Traf. Law §§ 1701 *et seq.*, to address traffic congestion in New York City and provide capital funding for mass transit projects.  (*See Rockland* Compl. ¶¶ 16, 18; *Orange* Compl. ¶¶ 15, 17, 19.)  The Act authorized the TBTA to establish tolls for vehicles entering or remaining in New York City's Central Business District ("CBD").  *See* N.Y. Veh. & Traf. Law §§ 1701, 1704; *Rockland* Compl. ¶ 16; *Orange* Compl. ¶¶ 15-16.)[3]  Pursuant to this authority, Defendants implemented the Central Business District Tolling Program (the "Program" or "Congestion Pricing"), under which motorists are charged a toll when they cross the boundary into the CBD.  (*Rockland* Compl. ¶ 20; *Orange* Compl. ¶ 27.)  The toll for vehicles other than taxis and for-hire vehicles is a set charge at the point of crossing that does not account for time or distance traveled in the CBD.  (*Rockland* Compl. ¶ 21; *Orange* Compl. ¶ 28; *see* CBD Toll Schedule.)[4]  Apart from taxis and for-hire vehicles, the toll does not apply to vehicles the trips of which originate and remain solely within the CBD.  (*Rockland* Compl. ¶ 23; *Orange* Compl. ¶ 31.)  The Program also provides crossing credit against the toll rate for vehicles that enter through the four tolled entries that lead directly into the CBD:  the Queens-Midtown, Hugh L.

---

[3] The Act defines the CBD as "the geographic area in the borough of Manhattan south of and inclusive of sixtieth street to the extent practicable but shall not include the FDR Drive, and New York state route 9A otherwise known as the 'West Side highway' including the Battery Park underpass and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St."  N.Y. Veh. & Traf. Law § 1704(2).

[4] Under the Program, the peak-period E-ZPass entry toll rate is currently $9 for passenger vehicles; $4.50 for motorcycles; and $14.40 or $21.60 for larger vehicles including transit and commuter buses and trucks, depending on size.  *See* CBD Toll Schedule.  Taxis pay $0.75 per trip within the CBD and for-hire vehicles pay $1.50 per trip.  *See id.*  The toll rate will increase in 2028 and again in 2031.  *See id.*

Carey, Holland, and Lincoln Tunnels.  *See* CBD Toll Schedule; Traffic Mobility Review Board Report at 8.  Defendants intend to use the revenue generated by the Program to fund mass transit projects.  (*Rockland* Compl. ¶ 24; *Orange* Compl. ¶ 32.)[5]

Although Rockland and Orange Counties (the "Counties") are within the MTA's jurisdiction, the Counties are considered "transit deserts" because of the lack of mass transit options into New York City.  (*Rockland* Compl. ¶¶ 35-36; *Orange* Compl. ¶ 21.)  From either County, there is no one-seat train ride into Manhattan; residents are served only by one sporadic train line that requires a transfer in either Secaucus, New Jersey or Hoboken, New Jersey and that frequently has a wait time of two or more hours.  (*Rockland* Compl. ¶¶ 37, 40; *Orange* Compl. ¶ 21.)[6]  Accordingly, residents of the Counties – who rely on their proximity to the CBD for work, healthcare, and recreation – largely commute by car because they do not have a reasonable mass transit option for travel into the CBD.  (*Rockland* Compl. ¶ 35; *Orange* Compl. ¶¶ 22, 24-25, 42.)  Yet residents of the Counties pay the same or similar MTA fees and taxes as residents in highly serviced areas.  (*Rockland* Compl. ¶ 41; *Orange* Compl. ¶ 21.)

### B.    **Procedural History**

The procedural history of these cases was set forth on the record in the Court's bench ruling on Plaintiffs' motions for a preliminary injunction enjoining implementation of the Program.  (*See Rockland* and *Orange* Minute Entries dated Dec. 23, 2024; *Rockland* Dkt. No. 64 ("BR Tr.") at 5:10-7:1.)

---

[5] Plaintiffs allege that the revenue will be allocated as follows:  80% to New York City subways and buses, 10% to the Long Island Railroad, and 10% to the Metro-North Railroad. (*Rockland* Compl. ¶¶ 26-27; *Orange* Compl. ¶ 34.)

[6] Plaintiffs do not provide information regarding bus service available in the Counties.

In sum, on March 27, 2024, the *Rockland* Plaintiffs filed their initial complaint, asserting the following causes of action:  (1) violation of the Equal Protection Clause of the U.S. and New York Constitutions; (2) unauthorized tax under New York law; and (3) violation of the Excessive Fines Clauses of the U.S. and New York Constitutions.  (*Rockland* Dkt. No. 2.)  On May 13, 2024, the *Rockland* Plaintiffs filed an amended complaint, asserting the same causes of action. (*Rockland* Compl.)[7]  On May 28, 2024, the *Orange* Plaintiffs filed their complaint, asserting the following causes of action:  (1) violation of the right to travel; (2) violation of the Equal Protection and Due Process Clauses of the U.S. and New York Constitutions; and (3) unauthorized tax under New York law.  (*Orange* Compl.)  The Court designated the cases as related on May 30, 2024.  (*See Orange* Docket Entry dated May 30, 2024.)

On September 30, 2024, Defendants filed a pre-motion letter in anticipation of their motion to dismiss the complaints.  (*Rockland* Dkt. No. 24.)  At the pre-motion conference on October 29, 2024, I ordered the parties to submit a proposed schedule for filing amended pleadings and briefing Defendants' anticipated motion in light of Governor Kathy Hochul's pause on the Program.  (*See Rockland* Minute Entry dated Oct. 29, 2024.)  On November 6, 2024, I adopted Plaintiffs' proposed schedule, setting as the deadline for filing amended pleadings thirty days after the pause was lifted.  (*Rockland* Dkt. No. 29.)  On November 18, 2024, I informed the parties that time to file amended pleadings began to run on November 14,

---

[7] The *Rockland* Plaintiffs also labeled as a cause of action a request that Defendants be enjoined to conduct a study of a possible bridge credit for Rockland County residents, but that request is untethered to any recognizable cause of action, and in any event, "[i]t is well settled that an injunction is a remedy, not a cause of action."  *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737 F. Supp. 3d 195, 211 (S.D.N.Y. 2024).  Moreover, the *Rockland* Plaintiffs, in their brief, do not oppose Defendants' motion to dismiss this cause of action.  Accordingly, the claim for injunctive relief is dismissed.  *See U.S. Bank Nat'l Ass'n as Tr. of Registered Holders of GS Mortg. Sec. Corp. II, Com. Mortg. Pass Through Certificates, Series 2012-GCJ9 v. Mattone*, 769 F. Supp. 3d 298, 316 (S.D.N.Y. 2025).

2024, the day the Governor announced that the paused was lifted.  (*Rockland* Dkt. No. 32.)  I

also directed the parties to confer on and propose a briefing schedule for Plaintiffs' potential

motions for a preliminary injunction, (*id.*), which they submitted on November 26, 2024,

(*Rockland* Dkt. No. 36), and which I approved the same day, (*Rockland* Dkt. No. 37).

On December 6, 2024, Plaintiffs filed their respective motions for a preliminary

injunction seeking to enjoin implementation of the Program.  (*Rockland* Dkt. No. 43; *Orange*

Dkt. No. 37.)  On December 23, 2024, I issued a bench ruling (the "December 23 bench ruling")

denying the motions.  (*Rockland* Minute Entry dated Dec. 23, 2024; *Rockland* Dkt. No. 52

("December 23 Order").)  I also set a briefing schedule for Defendants' omnibus motion to

dismiss.  (*Rockland* Minute Entry dated Dec. 23, 2024.)  The instant motion followed.[8]

## II.    **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

---

[8] On December 24, 2024, the *Rockland* Plaintiffs filed a Notice of Interlocutory Appeal from the Court's December 23 Order.  (*Rockland* Dkt. No. 53.)  On January 2, 2025, the *Rockland* Plaintiffs moved in the Second Circuit for an emergency stay of the Program pending appeal, which the Circuit denied the next day because the *Rockland* Plaintiffs did not first move in this Court for an injunction pending the appeal.  (*Rockland* Dkt. No. 54.)  On January 9, 2025, the *Rockland* Plaintiffs filed a letter motion in this Court for a stay of the Program pending the appeal, (*Rockland* Dkt. No. 55), which the Court denied in an Opinion & Order dated January 14, 2025, (*Rockland* Dkt. No. 56).  The Second Circuit thereafter denied the *Rockland* Plaintiffs' motion for a stay pending appeal.  (*Rockland* Dkt. No. 60.)

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

As an initial matter, Defendants contend that under the law of the case doctrine, this Court should adhere to the rulings of law it made in its December 23 bench ruling denying Plaintiffs' requests for a preliminary injunction. (*See Rockland* Dkt. No. 58 ("Ds' Mem.") at 4; *Rockland* Dkt. No. 62 ("Ds' Reply") at 1.) The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). But "[a] preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative,"

and "[i]t would therefore be anomalous at least in most cases . . . to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits." *Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992); *see Cayuga Indian Nation of N.Y. v. Seneca Cnty.,* 978 F.3d 829, 834 (2d Cir. 2020). Accordingly, the Court can exercise its discretion, *see Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021), to reconsider the legal issues addressed in its December 23 bench ruling, *see Milhaven v. Country Vill. Apartment*, No. 19-CV-2384, 2020 WL 5663380, at *4 n.4 (S.D.N.Y. Sept. 23, 2020). In light of the substantial overlap in legal issues, however, the Court's prior analysis will be useful in assessing Plaintiffs' claims. *See Garland v. City of N.Y.*, 665 F. Supp. 3d 295, 305 (E.D.N.Y. 2023), *aff'd sub nom. Garland v. N.Y.C. Fire Dep't*, No. 23-663, 2024 WL 445001 (2d Cir. Feb. 6, 2024) (summary order), *cert. denied*, 145 S. Ct. 266 (2024); *Broecker v. N.Y.C. Dep't of Educ.*, No. 21-CV-6387, 2023 WL 2710245, at *8 (E.D.N.Y. Mar. 30, 2023), *aff'd*, No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023) (summary order), and *aff'd*, No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) (summary order).

### A.    <u>Right to Travel</u>

The *Orange* Plaintiffs allege that the Program violates the right to travel. "Courts have long recognized that the Constitution protects a right to travel within the United States, including for purely intrastate travel." *Selevan v. N.Y. Thruway Auth.* ("*Selevan II*"), 711 F.3d 253, 257 (2d Cir. 2013) (*per curiam*) (collecting cases). "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Although strict scrutiny applies to denials of the fundamental right to travel, "minor restrictions on travel simply do not amount to the denial of a fundamental

right." *Selevan II*, 711 F.3d at 258; *see Jeffery v. City of N.Y.*, 113 F.4th 176, 191 (2d Cir. 2024) (collecting cases), *cert. denied* 145 S. Ct. 1174 (2025). In such circumstances, courts apply the three-part test set forth by the Supreme Court in *Evansville-Vanderburgh* and *Northwest Airlines*. *See Selevan v. N.Y. Thruway Auth.* ("*Selevan I*"), 584 F.3d 82, 102 (2d Cir. 2009) (citing *Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 369 (1994); *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 716-17 (1972)).

I have already held that the toll is subject to the *Northwest Airlines* test, (*see* BR Tr. at 12:5-13:20), and I see no reason to depart from that ruling.[9] As set forth in the December 23 bench ruling, courts in this Circuit have uniformly held that tolling programs like the one at issue here are only minor restrictions on travel that do not call for strict scrutiny review. *See, e.g.*, *Angus Partners LLC v. Walder*, 52 F. Supp. 3d 546, 560 (S.D.N.Y. 2014); *Janes v. Triborough Bridge & Tunnel Auth.*, 977 F. Supp. 2d 320, 332-36 (S.D.N.Y. 2013), *aff'd*, 774 F.3d 1052 (2d Cir. 2014) (*per curiam*); *cf. Weisshaus v. Port Auth. of N.Y. & N.J.*, 497 F. App'x 102, 104 (2d Cir. 2012) (summary order) (affirming dismissal of right to travel claim challenging Port Authority tolls). The *Orange* Plaintiffs argue that the Court should apply strict scrutiny review because the Program seeks to deter travel into the CBD, (*see* Orange Dkt. No. 48 ("*Orange* Ps' Opp.") at 3), but the Court has already rejected that argument, (*see* BR Tr. at 12:22-13:18), on the ground that the Program does not impede or primarily seek to impede travel into the CBD, but rather seeks to affect the mode of transportation that people use when they travel. Because "travelers do not have a constitutional right to the most convenient form of travel," *Weisshaus*,

---

[9] Another court in this district likewise found that the toll imposed by the Program is subject to the *Northwest Airlines* test, *see Chan v. United States Dep't of Transp.*, No. 23-CV-10365, 2024 WL 5199945, at *13-14 (S.D.N.Y. Dec. 23, 2024), and I concur with Judge Liman's thorough analysis of the issue.

497 F. App'x at 104, "burdens on a single mode of transportation do not implicate the right to interstate travel," *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007). That the *Orange* Plaintiffs do not have a one-seat train option into the CBD is inapposite where they concede that alternative modes of travel exist. (*See Orange* Compl. ¶ 21); *see also Doe v. U.S. Sec'y of Transp.*, No. 17-CV-7868, 2018 WL 6411277, at *10 (S.D.N.Y. Dec. 4, 2018) ("There are any number of conditions that might make particular forms of travel more difficult for some people than for others . . . but avoiding the inconvenience associated with finding alternate ways to travel does not rise to the level of a fundamental constitutional right.").[10]

The *Orange* Plaintiffs also advance new arguments in support of their position that strict scrutiny applies, none of which I find availing. First, the *Orange* Plaintiffs assert that the toll is not a minor restriction on travel because it imposes a burdensome cost on travelers who do not have a reasonable mass transit alternative. (*See Orange* Ps' Opp. at 4.) But a $9 charge to enter the central business district in one of the most expensive cities in the world, especially where alternative modes of transportation exist, simply does not present more than a minor restriction on travel. *See Janes*, 977 F. Supp. 2d at 334 ($10.66 toll to cross the Verrazano Bridge not more than a minor restriction on travel). The *Orange* Plaintiffs also argue that the Program draws

---

[10] The *Orange* Plaintiffs' attempts to distinguish *Town of Southold* and *Doe* are unavailing. First, they argue that *Town of Southold* is inapposite because it dealt with interstate, as opposed to intrastate, travel. (*See Orange* Ps' Opp. at 4.) But courts in this Circuit have long recognized that the right to travel applies equally to interstate and intrastate travel. *See Jeffery*, 113 F.4th at 191; *Selevan II*, 711 F.3d at 257. Next, they argue that *Doe* is inapplicable because it dealt with a personal medical condition that affected the plaintiff's ability to travel, not an alleged unconstitutional toll. (*See Orange* Ps' Opp. at 5.) To be sure, the plaintiff in *Doe* complained that her ability to travel was limited by the presence of service dogs, to which she is allergic, on airplanes and in hotels. *See Doe*, 2018 WL 6411277, at *10. But the principle for which the Court cited *Doe* – that travelers do not have a right to the most convenient form of transportation – applies to all impediments to the ability to travel. That *Doe* involved service dogs and this case involves a toll does not affect the applicability of that general principle.

"invidious distinctions" between motorists whose trips originate outside the CBD and are therefore subject to the toll, and motorists whose trips originate within the CBD and therefore pay no toll to drive within the CBD. (*See Orange* Ps' Opp. at 3.) As set forth in my analysis of Plaintiffs' equal protection claims below, however, I find that distinction to be reasonable. Accordingly, the Program is not subject to strict scrutiny review and must be examined under the test set forth in *Northwest Airlines*.

> Under *Northwest Airlines*, the constitutional permissibility of fees charged for the use of state facilities is evaluated under a three-part test, which asks whether the fee "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce."

*Selevan II*, 711 F.3d at 259 (quoting *Nw. Airlines, Inc.*, 510 U.S. at 369). "The third prong, whether a toll discriminates against interstate commerce, is a 'threshold inquiry' and if a policy survives this prong it will 'have a comparatively easier time passing constitutional muster.'" *Angus Partners LLC*, 52 F. Supp. 3d at 560 (quoting *Selevan I*, 584 F.3d at 94).

I already determined in my December 23 bench ruling that the Program passes the *Northwest Airlines* test, (*see* BR Tr. at 14:13-19:13), and the *Orange* Plaintiffs do not advance any arguments in opposition to the current motion that the Court did not address in its prior ruling. Moreover, Judge Liman recently determined in *Chan* that the plaintiffs in that case failed to plead that the Program violates any element of the *Northwest Airlines* test, and he therefore dismissed the right to travel claim challenging the Program. *See Chan v. United States Dep't of Transp.*, No. 23-CV-10365, 2025 WL 1144703, at *14-24 (S.D.N.Y. Apr. 17, 2025). The Court finds that analysis persuasive as to the Complaints here, and adheres to its previously-stated view that the Program passes muster under the *Northwest Airlines* test. For the sake of completeness, however, and in an abundance of caution, the Court will address each factor in turn.

### 1.    Discrimination Against Interstate Commerce

"[A] state regulation discriminates against interstate commerce only if it imposes commercial barriers or discriminates against an article of commerce by reason of its origin or destination out of State." *Selevan I*, 584 F.3d at 95. "[A] plaintiff must identify an in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors." *Id.* In essence, the Court "must direct its inquiry to determining whether the policy is basically a protectionist measure, or whether it can fairly be viewed as a policy directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Angus Partners LLC*, 52 F. Supp. 3d at 561.

The *Orange* Plaintiffs do not identify any in-state commercial interest that the Program favors at the expense of out-of-state competitors.[11] As *Chan* observed:

> The Tolling Program does not treat in-state and out-of-state interests differently. . . . [T]he Tolling Program is indifferent to the origin of the person entering the CBD or whether such person is engaged in interstate or intrastate business. A passenger car that enters the CBD having begun its trip in New Jersey is charged the same single daily fee as a car that enters from the Upper West Side of Manhattan. Trucks that enter the CBD are charged the same per-entry fee regardless [of] whether they are engaged in purely intrastate business or are engaged in interstate business. The mass transit system does not distinguish between riders who enter the system having begun their trip in New Jersey or Connecticut, riders who live in one of the five boroughs of New York City, or riders hailing from one of New York's other counties.

---

[11] In fact, the *Orange* Plaintiffs do not advance any arguments with respect to this element, except to say that "[i]t is not contested here that the program toll" discriminates against interstate commerce. (*Orange* Ps' Opp. at 7.) The Court finds this statement curious, particularly because Defendants clearly argue in their brief that the Program does not discriminate against interstate commerce. (*See* Ds' Mem. at 7-8.) Because the *Orange* Plaintiffs failed to respond to Defendants' arguments with respect to this element, they have implicitly conceded that the Program passes this element, or at least have abandoned any argument to the contrary. *See Emanuel v. City of N.Y.*, No. 23-CV-2980, 2024 WL 3638328, at *4 (S.D.N.Y. Aug. 2, 2024); *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022). The Court will nevertheless address this element on the merits.

2025 WL 1144703, at *14. "To be sure, that in-state residents are disadvantaged by the policies along with outsiders does not foreclose a finding of discrimination against interstate commerce." *Janes*, 977 F. Supp. 2d at 338. "But it supplies a valuable gauge of the [Program's] overall effect, and strongly undermines any claim that they are driven by economic protectionism." *Id.*

That the Program provides crossing credit against the toll rate for vehicles that enter the CBD from the Queens-Midtown, Hugh L. Carey, Holland, and Lincoln Tunnels, but provides no such credit for the George Washington Bridge ("GWB"), does not mean that the Program discriminates against interstate commerce. As in *Chan*, the *Orange* Plaintiffs

> do not allege facts that would suggest that the Project Sponsors excluded the George Washington Bridge from a discount by reason of the fact that it connects with New Jersey. Indeed, of the four crossings that afford lower tolls to motorists entering the CBD, two connect New York to New Jersey (the Lincoln Tunnel and the Holland Tunnel) and two are internal to New York (the Queens-Midtown Tunnel and the Hugh L. Carey Tunnel). And none of the other bridges that are internal to New York are eligible for crossing credits.

2025 WL 1144703, at *15.[12] Indeed, that the GWB does not connect to the CBD is the obvious distinction between it and the four tunnels for which there is a discount. In sum, the *Orange* Plaintiffs "do not allege any in-state commercial interest that benefits from the differential bridge and tunnel tolls in a manner that could disadvantage any out-of-state commercial interest." *Id.*

The low-income tax credits for CBD residents likewise do not discriminate against interstate commerce. Defendants have a "legitimate local concern[]" in reducing the toll burden on motorists who, by virtue of where they live, will have to pay the toll every time they return home from outside of the CBD. *Angus Partners LLC*, 52 F. Supp. 3d at 561; *see Janes*, 977 F.

---

[12] The Court may take judicial notice of the tunnels' start and end points. *See Chan*, 2025 WL 1144703, at *15 n.11.

Supp. 2d at 338-39 (differential toll policies do not discriminate against interstate commerce where "the benign purpose underlying the challenged policies is apparent").  As *Chan* noted:

> [t]he tolling structure at issue here parallels the one implemented in *Selevan I*, where motorists crossing the Grand Island Bridges were tolled 75 cents per crossing but residents of Grand Island received discounted toll rates of as little as 9 cents per crossing.  There, the Second Circuit held that the plaintiffs ha[d] failed to identify any specific interests implicated by the tax credit and thus that plaintiffs ha[d] not alleged that the toll policy discriminates against interstate commerce.  Here too, some residents of the CBD may receive a tax credit to offset the fee, but absent an out-of-state comparator, that benefit to certain low-income residents does not inherently convey discrimination against interstate commerce.

2025 WL 1144703, at *16.  Accordingly, the *Orange* Plaintiffs have not plausibly alleged that the Program discriminates against interstate commerce.

### 2.    Fair Approximation of Use

Next, the Court must consider whether the toll is "based on some fair approximation of use of the facilities."  *Nw. Airlines, Inc.*, 510 U.S. at 369.  "There need not be a perfect fit between the use of the facilities and the support of those facilities by the fee."  *Chan*, 2025 WL 1144703, at *16.  "[A]ll that is required is a functional relationship between the toll and the facilities used by the toll's payers."  *Id.*; *see Janes*, 977 F. Supp. 2d at 339 (the fair approximation prong "does not require a perfect fit; it simply requires reasonableness").

The *Orange* Plaintiffs argue that there is not a functional relationship between the toll and the facilities used by the toll payers because the toll proceeds are not earmarked for road upkeep but rather for mass transit projects that do not benefit the toll payers.  (*See Orange* Ps' Opp. at 5-6.)  The Court disagrees.  "[C]ourts in this Circuit have long held that certain bridges, tunnels, roadways, public transit systems and commuter railways may form an integrated, interdependent transportation system such that components of the integrated system bear a functional relationship to tolls charged in connection with other components."  *Chan*, 2025 WL 1144703, at

*17; *see Angus Partners LLC*, 52 F. Supp. 3d at 565-66.  The Court agrees with *Chan* that New York City operates as a single integrated transportation system such that the toll charged for entering the CBD bears a functional relationship to the facilities used by the toll payers:

> The cars and trucks that enter the CBD, the public buses that traverse it, and the underground subways that take people to and from the CBD are all interrelated. The public subsidization of one of the specific modes of transportation, *e.g.*, the maintenance of subway tracks or public buses, provides value to the users of other modes of transportation, *e.g.*, passengers cars or trucks.  If the subways or public buses were to stop running, the roads would invariably be crowded with even more cars and trucks and those persons who travel by car would suffer from the increased traffic.  To the extent that the subways and public buses are subsidized and provide an alternative to traveling into and within the CBD, then it is the drivers of cars and trucks, as much or more so than the users of public transportation, who benefit.  They will have reduced traffic time and easier means of transit.

*Chan*, 2025 WL 1144703, at *17; *see id.* at *18 (collecting cases finding that New York City operates a single integrated transportation system); *Angus Partners LLC*, 52 F. Supp. 3d at 567 ("Traffic spillover and substitution effects are appropriate considerations in determining whether a functional relationship exists.").[13]  Orange County residents who choose to drive into the CBD will benefit from the reduced traffic congestion that will result from improvements to the mass transit system.  The Court is therefore unpersuaded by the *Orange* Plaintiffs' argument that the toll bears no relationship to those who pay it.  *See Angus Partners LLC*, 52 F. Supp. 3d at 568 ("[G]iven the substantial evidence that traffic flow on the TBTA bridges and tunnels would suffer significantly without the MTA's mass transit and commuter railway services, it is not unfair for the MTA to allocate TBTA surpluses to support these functionally related facilities.").

---

[13] This Court similarly takes judicial notice of New York City's geography and the existence of the roadways, bridges, tunnels, subways, commuter trains, buses, and bike paths that comprise New York City's transportation network.  *See Chan*, 2025 WL 1144703, at *17-18 (collecting cases for the proposition that courts can take judicial notice of geography and public transit maps and networks).

Because the *Orange* Plaintiffs have not alleged that toll revenue will be used to fund anything outside of New York City's integrated transportation system, they fail to show that the toll is not a fair approximation of use.

### 3.    Excessiveness in Relation to Benefits Conferred

Finally, the Court must determine whether the toll is "excessive in relation to the benefits conferred." *Nw. Airlines, Inc.*, 510 U.S. at 369. "Under the excessiveness prong, the tolls collected may not exceed proper margins when taking into consideration the benefits conferred." *Angus Partners LLC*, 52 F. Supp. 3d at 568-69. The Second Circuit has emphasized, however, that "there need not be a perfect fit" between the toll and the benefits conferred; the standard "simply requires reasonableness." *Selevan II*, 711 F.3d at 260. Under this prong, "it is fair to consider the benefits that flow from the tolls charged . . . on the entire transportation system within the New York City area." *Janes*, 977 F. Supp. 2d at 341.

The *Orange* Plaintiffs appear to argue that the $9 charge is excessive because they will not benefit from the projects for which the toll revenue will be used. (*See Orange* Ps' Opp. at 6.) But as set forth above, toll payers will enjoy reduced congestion and decreased travel time, and others in the integrated transportation system will enjoy mass transit improvements. (*See Orange* Compl. ¶ 20.) Reduced pollution will also be a gain for everyone. (*Id.*) In light of these benefits, it simply cannot be said that the toll is excessive. And to the extent the *Orange* Plaintiffs argue that the tolls are invalid because people other than those subject to the toll will benefit from them, they "offer no legal support for the notion that, for a fee or toll to be valid under the second *Northwest Airlines* prong, its benefits must redound lopsidedly to those who pay that fee or toll." *Janes*, 977 F. Supp. 2d at 342. That some of the benefits from the toll will flow to others who use the MTA's transit systems "is not itself evidence that [toll payers] did not

17

benefit reasonably." *Angus Partners LLC*, 52 F. Supp. 3d at 570. "Rather, it is enough that [toll payers] benefit in fair relation to the fees or tolls they pay." *Janes*, 977 F. Supp. 2d at 342. Here, the *Orange* Plaintiffs have not plausibly alleged that they will not benefit in fair relation to the tolls they pay.

Because the *Orange* Plaintiffs have not adequately pleaded that the Program violates any element of the *Northwest Airlines* test, their right to travel claim must be dismissed.

> **B.**    **Equal Protection and Due Process**

Plaintiffs next allege that the Program violates the Equal Protection Clauses of the U.S. and New York Constitutions. The Fourteenth Amendment to the U.S. Constitution and Article I, Section 11 of the New York Constitution provide that no person shall be denied "the equal protection of the laws." U.S. Const. amend. XIV, § 1; N.Y. Const. art. I, § 11. The analysis under both provisions is the same. *See Town of Southold*, 477 F.3d at 52 n.3 ("[T]he Equal Protection Clauses of the federal and New York Constitutions are coextensive."). "The Equal Protection Clause of the Fourteenth Amendment embodies a general rule that States must treat like cases alike, but may treat unlike cases accordingly." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018). "Whether a state law or policy satisfies this general principle, and what sort of review a court must apply, depends on the nature of the class of individuals the state or local government treats differently or the rights at issue." *Id.* "If a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).

Here, Plaintiffs rightly concede that rational basis review applies. (*See Rockland* Dkt. No. 61 ("*Rockland* Ps' Opp.") at 7; *Orange* Ps' Opp. at 7.) Rational basis review is "highly

deferential," *Winston*, 887 F.3d at 560, and, as such, it "'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). "Rather, [courts] are required to uphold the classification if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Plaintiffs therefore carry a "heavy burden to negative every conceivable basis which might support" the policy. *Winston*, 887 F.3d at 560. But rational basis review "is not meant to be toothless." *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013). Instead, it "imposes a requirement of some rationality in the nature of the class singled out." *Winston*, 887 F.3d at 560.

As an initial matter, I adhere to my determination that the Program's stated goals – reducing congestion and pollution in the CBD and raising revenue for the MTA's mass transit projects, *see* N.Y. Veh. & Traf. Law § 1701 – are legitimate government interests, (*see* BR Tr. at 21:9-20). The *Orange* Plaintiffs once again argue, relying on the Blue-Ribbon Report on MTA Fare and Toll Evasion, that revenue-raising is not a legitimate goal in light of "the failure of the [D]efendants to properly manage their finances." (*Orange* Ps' Opp. at 7.) But the *Orange* Plaintiffs make no such allegation in their complaint, and, in any event, as already explained, I fail to see how the MTA's operating losses delegitimize its goal of raising revenue. (*See* BR Tr. at 21:20-22:13.) That Defendants could raise revenue by a different method – such as by improving their current fare and toll collection rates – is not a proper consideration under rational basis review. *See Spina v. D.H.S.*, 470 F.3d 116, 131 (2d Cir. 2006) ("[I]t is not a function of the courts [under rational basis review] to speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner."); *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 292 (E.D.N.Y. 2021) ("The

Supreme Court has emphasized that application of rational basis review is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.").  Accordingly, for the reasons set forth on the record in the Court's December 23 bench ruling, (*see* BR Tr. at 21:9-20), the Program's stated purposes are legitimate government interests.

The Court also finds, as it did in its December 23 bench ruling, that the Program plainly advances those legitimate interests.  (*See* BR Tr. 22:14-24:23.)  By imposing a toll on drivers who enter the CBD, the Program will likely deter some motorists from driving into the CBD, which will reduce traffic congestion and pollution, and Defendants will collect revenue from those who continue to drive into the CBD, which they will use to fund mass transit projects.  In their complaints, Plaintiffs allege that the Program draws an irrational distinction between motorists whose trips originate outside the CBD and are therefore subject to the toll, and motorists whose trips originate within the CBD and therefore pay no toll to drive within the CBD.  (*See Rockland* Compl. ¶¶ 46-56; *Orange* Compl. ¶¶ 55-68.)[14]  But it is not irrational to charge motorists only when they enter the CBD.  Doing so will discourage some motorists from driving into the area, thereby reducing congestion.  And as Defendants point out, charging motorists at the entrance to the CBD promotes administrative efficiency and is familiar to drivers.  *See Est. of Landers v. Leavitt*, 545 F.3d 98, 112 (2d Cir. 2008), *as revised* (Jan. 15, 2009) (administrative efficiency is legitimate interest under rational basis review); *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 78-79 (3d Cir. 2022) (to the same effect); *cf. Armour v. City of Indianapolis*, 566 U.S. 673, 682 (2012) ("Ordinarily, administrative considerations can justify a tax-related distinction."); *Califano v. Jobst*, 434 U.S. 47, 53 (1977) ("General rules are

---

[14] This criticism is not quite accurate, as the Program imposes per-trip charges on taxis and for-hire vehicles even if the trip originates within the CBD.  *See* CBD Toll Schedule.

essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases."). Nor have Plaintiffs suggested any practical means by which Defendants could charge non-metered vehicles that drive only within the CBD or otherwise track the distance motorists drive within the CBD. In any event, that more precise classifications could be crafted is not a proper consideration under rational basis review. *See Nguyen v. I.N.S.*, 533 U.S. 53, 77 (2001) (O'Connor, J., dissenting) ("The fact that other means are better suited to the achievement of governmental ends . . . is of no moment under rational basis review."); *Spina*, 470 F.3d at 131 ("[W]e need not consider whether Congress might have employed more precise language or other classifications better to achieve its goal.").

In their brief, the *Rockland* Plaintiffs raise other "disparities of treatment" not set forth in their complaint. (*See Rockland* Ps' Opp. at 8.) Because Plaintiffs "cannot use their opposition to the motion to dismiss to raise new claims or arguments," *Louis v. N.Y.C. Hous. Auth.*, 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016), the Court need not consider these other classifications. Nevertheless, I find that they are supported by rational bases. For example, the *Rockland* Plaintiffs argue that it is irrational to provide crossing credit against the toll rate for vehicles that enter the CBD through tunnel, but not bridge, crossings. (*See Rockland* Ps' Opp. at 8.) But the tunnels subject to the crossing credit are the only tolled entries that lead directly into the CBD, *see* Traffic Mobility Review Board Report at 8, 24, and it is rational to provide a credit to drivers already subject to a separate toll for direct entry into the CBD. The *Rockland* Plaintiffs also argue that it is irrational to provide income tax credits for low-income CBD residents but not

residents of other locales.  (*See Rockland* Ps' Opp. at 8.)[15]  But it is plainly rational to reduce the toll burden for drivers of limited means who, by virtue of where they live, must pay the toll every time they return home from outside of the CBD.

Finally, the *Rockland* Plaintiffs contend that the Court should consider the costs to Rockland County residents in deciding whether the Program survives rational basis review.  (*See Rockland* Ps' Opp. at 9.)  The Court appreciates that the Program might well impose a heavier burden on residents of Rockland and Orange Counties than residents of other counties that have more convenient mass transit alternatives.  One can debate, as a matter of policy, whether those burdens are fair or wise.  But "[r]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *Winston*, 887 F.3d at 560.  "Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  *Heller*, 509 U.S. at 319.  Under this standard, therefore, Plaintiffs fail to state a claim under the Equal Protection Clause.[16]

---

[15] As Defendants point out, (*see* Ds' Reply at 4), low-income Rockland County residents who drive into the CBD are eligible to receive a 50% discount on tolls after the first ten trips in a calendar month.  *See* Low-Income Discount Plan.  Regardless, for the reasons set forth, the discount for low-income residents of the CBD is rational.

[16] The *Rockland* Plaintiffs also argue that the motion to dismiss the equal protection claims is premature because Defendants have not yet demonstrated that the Program's goals of reducing traffic congestion and pollution have been met.  (*See Rockland* Ps' Opp. at 11.)  But the Supreme Court has held that, under rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993); *see United States v. Amalfi*, 47 F.4th 114, 125 (2d Cir. 2022) (under rational basis review, "challengers have the burden to negative every conceivable basis which might support" the classification).  Accordingly, the Program's success is not a proper consideration for this Court under rational basis review.

The *Orange* Plaintiffs also assert a claim under the Due Process Clauses of the U.S. and New York Constitutions.  The analysis under both provisions is the same.  *See Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) ("With some exceptions, New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive—or assumed that they are.").  Because the Program does not implicate a fundamental right, rational basis review applies, and "the governmental regulation need only be reasonably related to a legitimate state objective."  *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022).  Therefore, for the reasons set forth above, the *Orange* Plaintiffs' due process claims likewise fail.  *See Amalfi*, 47 F.4th at 124-25 (equal protection and due process analysis the same "when a challenged statute does not implicate suspect or quasi-suspect classifications or burden fundamental rights").

Accordingly, Plaintiffs fail to state a claim under either the Equal Protection or Due Process Clauses of the U.S. and New York Constitutions.

## C.    Unauthorized Tax

Plaintiffs also allege that the toll is an unauthorized tax.  "A tax is a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen."  *Walton v. N.Y. State Dep't of Corr. Servs.*, 13 N.Y.3d 475, 485 (2009).  Tolls, on the other hand, "are the compensation for the use of another's property, or of improvements made by him."  *Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth.*, 38 N.Y.2d 545, 556 (1976) (Cooke, J., concurring); *see Smith v. Turner*, 48 U.S. 283, 344 (1849).  Under New York law, "[o]nly legislative bodies have the power to impose taxes."  *Walton*, 13 N.Y.3d at 485 (citing N.Y. Const. art. III, § 1); *see Woodmere, LLC v. Nassau Cnty. Plan. Comm'n*, 218 N.Y.S.3d 627, 630 (App. Div. 2d Dep't 2024).  "The power

to tax may not . . . be delegated to administrative agencies or other governmental departments." *Greater Poughkeepsie Libr. Dist. v. Town of Poughkeepsie*, 81 N.Y.2d 574, 580 (1993).  Tolls, on the other hand, may be prescribed by the legislature, but ordinarily are set by boards appointed for that purpose.  *See Carey Transp., Inc.*, 38 N.Y.2d at 556 (Cooke, J., concurring) (citing *Sands v. Manistee Riv. Improvement Co.*, 123 U.S. 288, 294 (1887)).

Plaintiffs argue that the charge set by the Program is a tax, rather than a toll, because it funds mass transit projects that do not benefit those who must pay it, and that, because Defendants do not have the authority to impose a tax, the charge is unlawful.  (*See Rockland* Ps' Opp. at 12; *Orange* Ps' Opp. at 8-9.)  I reject that argument for the reasons stated in my December 23 bench ruling.  (*See* BR Tr. at 26:16-27:25.)  In short, the charge is not a tax because it plainly is not exacted of all citizens, but only as consideration for entering the CBD, and it does not support the general costs of government, but only mass transit.  (*See Rockland* Compl. ¶¶ 24, 26-27; *Orange* Compl. ¶¶ 19-20, 32-34.)  And as set forth above in the Court's analysis of the *Orange* Plaintiffs' right to travel claim, the charge is related to a "particular benefit received" by the charge payer.  *Walton*, 13 N.Y.3d at 485.  Because New York City operates as a single integrated transportation system, motorists who drive into the CBD will benefit from the mass transit improvements funded by the charge in the form of reduced congestion and decreased travel times.  *See Janes*, 977 F. Supp. 2d at 341 (benefit of mass transit "is enjoyed especially by commuters to and from locations where mass transit options also exist, providing an alternative option to those particular arteries for commuters and thus decreasing the traffic thereon.").  Because the charge is exacted only on those who drive into the CBD and is tied to an improvement from which they will benefit, the charge is a toll, not a tax.

Accordingly, Plaintiffs fail to state an unauthorized tax claim.

D.    **Excessive Fine**

Finally, the *Rockland* Plaintiffs allege that the Program violates the Excessive Fines

Clauses of the U.S. and New York Constitutions.  Both the Eighth Amendment to the U.S.

Constitution and Article I, Section 5 of the New York Constitution prohibit the imposition of

"excessive fines."  U.S. Const. amend. VIII; N.Y. Const. art. I, § 5.  The analysis under both

provisions is the same.  *See Wirth v. City of Rochester*, No. 17-CV-6347, 2021 WL 3270512, at

*2 (W.D.N.Y. July 30, 2021) ("New York's Excessive Fines clause requires the same analysis as

the federal, and provides no greater protection.").  To determine whether a financial penalty is

excessive, courts conduct a two-step inquiry.  *See United States v. Viloski*, 814 F.3d 104, 108 (2d

Cir. 2016).  First, a court must "determine whether the Excessive Fines Clause applies at all."  *Id.*

at 109 (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).  If it does, the court must

then "determine whether the challenged forfeiture is unconstitutionally excessive."  *Id.*

As to the first step, the Excessive Fines Clause "applies only to those forfeitures that may

be characterized, at least in part, as punitive."  *Id.*; *see Reese v. Triborough Bridge & Tunnel

Auth.*, 91 F.4th 582, 589 n.2 (2d Cir. 2024).  "A fine may be punitive where it imposes an

economic penalty on the person for that person's actions, and seeks to deter future wrongdoing."

*Dorce v. City of N.Y.*, 608 F. Supp. 3d 118, 143 (S.D.N.Y. 2022).

> [T]he Second Circuit has looked to two factors in order to infer whether an
> imposition or demand for payment is punishment:  (1) whether the demand for
> payment "was imposed at the culmination of a criminal proceeding that required a
> conviction of the underlying felony and could not have been imposed upon an
> innocent party," and (2) "the nature of the statute that authorizes the demand for
> payment."

*Beatty v. Gilman*, 718 F. Supp. 3d 166, 185 (D. Conn. 2024) (quoting *United States v. An

Antique Platter of Gold*, 184 F.3d 131, 139-40 (2d Cir. 1999)).

Here, the toll is not subject to the Excessive Fines Clause. As set forth in the December 23 bench ruling, the toll applies to all drivers who enter the CBD without a criminal conviction or even a civil proceeding. And the Traffic Mobility Act – the legislation authorizing the Program – is civil in nature and makes clear that the charge is a toll, not a penalty for wrongdoing. *See, e.g.,* N.Y. Veh. & Traf. Law § 1704-a(1) ("[TBTA] shall have the power . . . to establish and *charge variable tolls and fees* for vehicles entering or remaining in the central business district at any time.") (emphasis added); *id.* § 1704(3)(a) (TBTA "shall plan, design, install, construct, and maintain the central business district *tolling* infrastructure.") (emphasis added).

Several courts have found that "[f]ines imposed for violating the cashless-tolling process are punitive in nature, and thus within the scope of the excessive fines clause." *O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, No. 19-CV-7586, 2021 WL 2581446, at *5 (S.D.N.Y. June 23, 2021); *see Rojas v. Triborough Bridge & Tunnel Auth.*, No. 18-CV-1433, 2022 WL 748457, at *6 (S.D.N.Y. Mar. 10, 2022), *aff'd sub nom. Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582 (2d Cir. 2024); *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 198 (S.D.N.Y. 2019). But that reasoning does not apply to the toll itself. Unlike in the cases where the tolling authority imposed a fee to punish the wrongdoing of using a bridge or tunnel without paying the toll, the toll here does not "seek to deter rule-breaking." *O'Diah*, 2021 WL 2581446, at *5. The *Rockland* Plaintiffs argue that the toll falls within the scope of the Excessive Fines Clause because it seeks to deter motorists from driving into the CBD. (*Rockland* Ps' Opp. at 13.) But the fact that the toll might discourage people from driving into the CBD does not, on its own, render the toll a fine. A toll that charges motorists for driving across a bridge might well have the effect of discouraging some drivers from using that bridge, but no court would consider that

26

toll to be a fine. Just as bridge tolls serve the remedial purpose of compensating the government

for the bridge's upkeep and maintenance, the toll here serves the remedial purposes of reducing

traffic congestion and raising revenue to improve mass transit. *See Viloski*, 814 F.3d at 109

("[P]urely remedial forfeitures . . . fall outside the scope of the Excessive Fines Clause."). It

does not, as the *Rockland* Plaintiffs suggest, make driving into the CBD a punishable offense. In

fact, the Program's success necessarily depends on at least some motorists continuing to drive

into the CBD. In sum, because the purpose of the toll is not "to encourage compliance with the

law and to punish those who fail to comply," *Retail Prop. Tr. v. Nassau Cnty. Dep't of

Assessment*, No. 17-CV-2193, 2024 WL 4664644, at *7 (E.D.N.Y. Aug. 21, 2024), the toll is not

a fine subject to the Excessive Fines Clause.[17]

---

[17] The Court notes, without deciding, that even if the toll were a fine, it likely would not
be unconstitutionally excessive. A fine "violates the Excessive Fines Clause if it is grossly
disproportional to the gravity of [the] offense." *Bajakajian*, 524 U.S. at 334. Courts consider the
following factors in conducting the excessiveness analysis:

> (1) the essence of the crime of the defendant and its relation to other criminal
> activity, (2) whether the defendant fits into the class of persons for whom the
> statute was principally designed, (3) the maximum sentence and fine that could
> have been imposed, and (4) the nature of the harm caused by the defendant's
> conduct.

*Viloski*, 814 F.3d at 110. Here, the Program imposes a $9 toll on all passenger vehicles that enter
the CBD. *See* CBD Toll Schedule. Although the act of driving into the CBD is certainly less
censurable than other conduct for which a fine might be imposed, there are significant harms
associated with severe traffic congestion, including economic costs to businesses and decreased
air quality. *Cf. O'Diah*, 2021 WL 2581446, at *6 (harm caused by plaintiff's failure to pay tolls
was minimal because it "affected only one party, the Government, and in a relatively minor
way"). A charge of $9 thus is likely not grossly disproportional in light of these harms. And it is
consistent with fines that other courts have upheld for comparable offenses. *See Torres v. City of
N.Y.*, 590 F. Supp. 3d 610, 628 (S.D.N.Y. 2022) ($95 and $115 fines for illegal parking
violations not grossly disproportional); *Rojas*, 2022 WL 748457, at *9-11 (average fine of
$18.61 for failing to pay tolls not grossly disproportional); *cf. O'Diah*, 2021 WL 2581446, at *5-
7 ($100 fines for failing to pay tolls, resulting in total of $56,450 in violation fees (roughly
eleven times greater than the underlying unpaid tolls), were grossly disproportional). In fact, a
simple trespass offense under New York law carries a maximum fine of $250. *See* N.Y. Penal

Accordingly, the *Rockland* Plaintiffs fail to state a claim under the Excessive Fines Clauses of the U.S. and New York Constitutions.[18]

## IV.    <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs were already granted leave to amend, (*see Rockland* Dkt. No. 29), and declined to do so, despite having the benefit of Defendants' pre-motion letter, (*see Rockland* Dkt. No. 24), and the discussion at the October 29, 2024 pre-motion conference, (*see* Minute Entry dated Oct. 29, 2024). Having already had the opportunity to amend and having failed to do so, Plaintiffs are not entitled to another bite at the apple on those issues. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 n.4 (2d Cir. 1998) (denial of amendment appropriate where court "already gave

---

Law §§ 80.05(4), 140.05. Therefore, even if the Program outlawed driving into the CBD, a $9 fine would not be excessive.

[18] The *Rockland* Plaintiffs argue, untethered to any cause of action, that the Court should apply the test set forth by the Supreme Court in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). (*See Rockland* Ps' Opp. at 14-15.) The Court finds this curious because the *Nollan/Dolan* test applies to Takings Clause claims, *see Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013), which Plaintiffs have not alleged. The *Rockland* Plaintiffs rely on the Supreme Court's recent decision in *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267 (2024), to support their assertion, but they misconstrue that decision. In *Sheetz*, the Supreme Court held that the *Nollan/Dolan* test applies equally to Takings Clause claims based on conditions imposed by legislatures as it does to such claims based on conditions imposed by administrative agencies. *See* 601 U.S. at 279. It did not, as the *Rockland* Plaintiffs suggest, extend *Nollan/Dolan*'s application to other constitutional claims.

[the plaintiff] the opportunity to file an amended complaint designed to cure the very defect that remains"); *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 559 (S.D.N.Y. 2010) ("Leave to amend is appropriately denied where . . . the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

Moreover, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could – or would – provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    <u>CONCLUSION</u>

As I noted in denying Plaintiffs' motions for a preliminary injunction, the congestion pricing program is going to be more costly to some people than others, but that does not make it unconstitutional. There are pros and cons to living in Rockland and Orange Counties, as there are with any locality. The congestion pricing toll is one of the cons, but it does not rise to the level of a constitutional deprivation.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (*Rockland* Dkt. No. 57; *Orange* Dkt. No. 45), and close both cases.

**SO ORDERED.**

Dated: July 14, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

30